**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARITZA WALKER, o/b/o J.B.,**

                           **Plaintiff,**

           **vs.**

**MICHAEL J. ASTRUE**, Commissioner of Social
Security Administration,[1]

                    **Defendant.**
_____

**1:06-CV-1180**
**(NAM)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Empire Justice Center | Louise Marie Tarantino, Esq. |
| 119 Washington Avenue | |
| 2nd Floor | |
| Albany, New York 12210 | |
| _Attorneys For Plaintiff_ | |
| | |
| Richard S. Hartunian | John M. Kelly, Esq. |
| United States Attorney for the | Special Assistant U.S. Attorney |
| Northern District of New York | |
| P.O. Box 7198 | |
| 100 South Clinton Street | |
| Syracuse, New York 13261-7198 | |
| and | |
| Office of General Counsel | Barbara L. Spivak, Esq. |
| Social Security Administration | Chief Counsel, Region II |
| 26 Federal Plaza | |
| New York, New York 10278 | Sommattie Ramrup, Esq. |
| _Attorneys For Defendant_ | Assistant Regional Counsel |

**Norman A. Mordue, Chief U. S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

_____

[1]  Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal
Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

## I.     INTRODUCTION

Plaintiff Maritza Walker brings the above-captioned action on behalf of her minor son, J.B., pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking a review of the Commissioner of Social Security's decision to deny J.B.'s application for disability benefits.

## II.     BACKGROUND

On April 20, 2004, plaintiff filed an application on J.B.'s behalf for Supplemental Security Income ("SSI").  (Administrative Transcript at p.54).[2]  Plaintiff was 13 years old at the time of the application and allegedly suffered from Attention Deficit Hyperactivity Disorder ("ADHD") and a learning disability.[3]  On August 10, 2004, J.B.'s application was denied and plaintiff requested a hearing by an ALJ which was held on October 17, 2005.  (T. 27, 359).  On January 31, 2006, the ALJ issued a decision denying J.B.'s claim for benefits.  (T. 15-22).  The Appeals Council denied plaintiff's request for review on August 1, 2006, making the ALJ's decision the final determination of the Commissioner. (T. 4-7).  This action followed.

## III.     DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[2]  "(T. )" refers to pages of the administrative transcript, Dkt. No. 5.

[3]  ADHD is an abbreviation for Attention Deficit Disorder with Hyperactivity.  http://www.medilexicon.com (last visited April 2, 2010).

42 U.S.C. § 1382c(a)(3)(C)(i).  That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).  The agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp.2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 2003 WL 21032012, at *7 (S.D.N.Y. 2003).  The first step of the test, which bears some similarity to the familiar, five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp.2d at 488.  If so, then both statutorily and by regulation the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(c)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, then the second step requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are severe – that is, which causes more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the existence of a severe impairment is discerned, at the third step, the agency must next determine whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth by regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  *Id.* Equivalence to a Listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve month durational requirement is satisfied, the child will be deemed disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Under the Social Security Regulations (the "Regulations"), analysis of functionality is performed by consideration of how a claimant functions in six areas which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. Those prescribed domains include:

> (i) [a]cquiring and using information;
> (ii) [a]ttending and completing tasks;
> (iii) [i]nteracting and relating with others;
> (iv) [m]oving about and manipulating objects;
> (v) [c]aring for [oneself]; and
> (vi) [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1). A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations". 20 C.F.R. § 416.926a(e)(3)(i); *see also Morgan v. Barnhart,* 2005 WL 925594, at *11 (S.D.N.Y. 2005).

Under 42 U.S.C. §§ 405(g) and 1383(c)(3),[4] the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F.Supp. 324, 325-26 (N.D.N.Y.

---

[4] Section 1383(c)(3) makes section 405(g) applicable to the SSI program and provides the basis for this Court's jurisdiction and limitations of its review.

1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson*, 817 F.2d at 986.

Using the three-step disability evaluation, the ALJ found at step one that J.B. has never engaged in any substantial gainful activity.  (T. 16).  At step two, the ALJ concluded that J.B. has severe impairments consisting of ADHD and a learning disability. (T. 16).  At the third step of the analysis, the ALJ found that none of J.B.'s severe impairments meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations.  (T. 21).  The ALJ evaluated J.B.'s functional abilities in the six domains established by 20 C.F.R. § 416.926a(b)(1) and found that J.B.'s limitations were "marked" with respect to attending and completing tasks. (T. 20).  The ALJ found that J.B.'s limitations were "less than marked" with regard to acquiring and using information, interacting and relating with others and his ability to care for himself. (T. 20-21) .   The ALJ found that J.B. has no limitation with regard to his health and physical well-being and in his ability to move about and manipulate objects.  (T. 20-21).  Consequently, the ALJ concluded that J.B. was not disabled.  (T. 22).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that the ALJ erred when he failed to find that J.B.'s impairments meet or equal Listing §112.11 for ADHD.  Plaintiff also claims that the ALJ erred by failing to find that J.B.'s impairments are functionally equivalent to the Listings.  Specifically, plaintiff argues that J.B. has an extreme limitation in the domain of attending and completing tasks, a marked impairment in acquiring and using information and a marked impairment in interacting and relating to others. (Dkt. No. 11).

## A.      Listing § 112.11 for ADHD

By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.   20 C.F.R. Pt. 404, Subpt. P, App. 1; *Lusher ex rel. Justice v. Comm'r of Soc. Sec.*, 2008 WL 2242652, at *6 (N.D.N.Y. 2008).  For both adults and children, "if an applicant satisfied the Listings, the applicant was presumed to be disabled, and did not have to prove 'whether he [or she] actually can perform his [or her] own prior work or other work.'" *Lusher*, 2008 WL 2242652, at *6 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-530 (1990)).

The Commissioner's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairment. 20 C.F.R. §§ 416.925, 416.926a; *see also Giles v. Chater*, 1996 WL 116188, at *5-6  (W.D.N.Y. 1996).  Where the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings. *Booker v. Heckler*, 1984 WL 622, at *3 (S.D.N.Y. 1984).  When evaluating a claimant's impairments, the ALJ must refer to the specific criteria set forth in the Listing.  *Morales v.*

*Barnhart*, 218 F.Supp.2d 450, 459-60 (S.D.N.Y. 2002).  Mere recitation of the medical evidence is insufficient unless the reports referred to contain substantiated conclusions concerning the Listings, and the ALJ expressly adopts the reasoning of those conclusions. *Id*.  The ALJ (not the Commissioner's lawyers) must "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review".  *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citations omitted).  A court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.*"  Morgan on Behalf of Morgan v. Chater*, 913 F.Supp.184, 188 -189 (W.D.N.Y. 1996) (quoting *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985)).

An ALJ has a legal duty to consider "all evidence" in the case record before making a determination as to whether a claimant is eligible for disability benefits.  20 C.F.R. § 416.920(a)(3); *see Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence as supports his determination, without affording consideration to evidence supporting the plaintiff's claims. It is grounds for remand for the ALJ to ignore parts of the record that are probative of the plaintiff's disability claim."); *see also Lopez v. Sec'y of Dep't of Health & Human Servs*., 728 F.2d 148, 150-51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.").

To meet or equal Listing § 112.11, a claimant's condition must satisfy two criteria set forth in Paragraphs A and B.  The relevant portions of Listing § 112.11 provide as follows:

112.11 Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of all three of the following:

1. Marked inattention; and
2. Marked impulsiveness; and
3. Marked hyperactivity;

And

B. For children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

The applicable provisions of Listing § 112.02(B)(2) provide as follows:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

8

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11 (2006); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2) (2006).  Standing alone, a diagnosis of ADHD does not establish a disability under the Act.  *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999) (citation omitted).

Plaintiff claims that J.B.'s impairments meet the criteria of Listing § 112.11 and argues that the ALJ failed to provide an explanation for his conclusion that J.B.'s impairments did not meet the definition of § 112.11.  (Dkt. No. 11, p. 18).  Plaintiff contends that the record contains ample evidence that J.B.'s condition encompasses all three elements of Listing § 112.11(A) including marked inattention, impulsiveness and hyperactivity and the criteria of § 112.11(B).

In the decision, the ALJ summarized the following records: (1) medical evaluations by John Thibodeau, Ph.D., a consultative examiner; (2) a Childhood Disability Evaluation by Teena Guenther, Ph.D., a non-examining psychologist; (3) a May 2004 Teacher Questionnaire completed by Sara Houghtaling, claimant's seventh grade teacher; (4) an October 2005 Teacher Questionnaire completed by Karen Altman, claimant's eighth grade special education teacher; and (5) claimant's seventh grade Individualized Education Program ("IEP"). (T. 17).

In June 2004, Dr. Thibodeau conducted a psychiatric and intelligence evaluation of claimant on behalf of the agency.  The ALJ summarized Dr. Thibodeau's opinion:

> claimant had the ability to attend to and follow and understand age-appropriate directions, respond appropriates [sic] to changes in the environment, and ask questions and request assistance.  He does have some problems with completing age-appropriate tasks, maintaining appropriate social behavior, learning in accordance with his own cognitive capacity, and interacting with peers and with adults due to his inattentiveness, social withdrawal and behavioral disturbance.  (T. 17).

The ALJ afforded Dr. Thibodeau's opinions "controlling weight". (T. 17).  The ALJ also discussed Dr. Guenther's opinions regarding claimant's limitations in the six functional domains.

Dr. Guenther opined that claimant had less than marked limitations in acquiring and using information, marked limitations in attending and completing tasks, less than marked limitations with interacting and relating with others, no limitations in moving about and manipulating objects, less than marked limitations in caring for himself and no limitations in health and physical well-being. (T. 17).  The ALJ assigned "great weight" to Dr. Guenther's conclusions as they were "consistent with and support[ed] the opinion of Dr. Thibodeau".  (T. 17).

Ms. Houghtaling and Ms. Altman provided opinions with regard to claimant's abilities within the six functional domains.  Ms. Houghtaling opined that claimant had an obvious problem in acquiring and using information; an obvious to serious problem in attending and completing tasks; a slight problem interacting to others and caring for himself; and no problem with moving or manipulating objects or with physical well-being. (T. 18).  Ms. Altman concluded that claimant had an obvious to serious problem in acquiring and using information; an obvious problem in attending and completing tasks; a slight problem in interacting and relating with others; no problems in moving or manipulating objects or caring for himself; and no problems with his well-being except for ADHD. (T. 18).  The ALJ afforded "some weight" to the teachers' evaluations as they were "consistent with Dr. Thibodeau's and Dr. Guenther's opinions". (T. 18).

The ALJ then concluded:

> The child has attention deficit hyperactivity disorder and a learning disability, which are "severe" within the meaning of 20 C.F.R. 416.924(c) and Social Security Rulings 96-3p and 85-28 because the child has more than slight abnormalities and more than minimal functional limitations. (T. 16).

The ALJ further concluded that:

> The child's attention hyperactivity disorder and learning disability does not meet or medically equal the severity of the impairment listed in Part A or Part B of Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations. (T. 22).

This is the extent of the ALJ's analysis with respect to this step of the evaluative process. Nowhere in the decision did the ALJ mention or address Listing § 112.11.  Indeed, the ALJ failed to specify any particular Listing leaving the Court unable to determine which Listings he considered in relation to claimant's impairments.  The ALJ's failure to address whether claimant's impairments met the specific requirements of § 112.11 or whether claimant has marked limitations in any of the areas of functioning outlined in § 112.02B was clear error. Moreover, upon a review of the record, the Court finds that the ALJ's conclusion is not supported by substantial evidence.  The Court will not engage in a discussion which is a task properly left to the Commissioner, however, given the similarities between J.B.'s symptoms and the criteria of Listing § 112.11, the ALJ should have given some explanation as to why J.B.'s impairments do not meet the criteria.  *See Giles*, 1996 WL 116188, at *5-6.

The record is replete with reports from claimant's teachers and school psychologists discussing claimant's ADHD, his difficulties with attention and his limited learning ability. Despite the plethora of evidence regarding claimant's impairments, the ALJ limited his discussion to only a portion of the record.  The ALJ entirely ignored the following evidence and omitted the reports and records from his discussion: (1) records from claimant's treating physician; (2) academic records and evaluations from 2000 through 2007; (3) a November 2004 evaluation by the Troy Central School District psychologist; (4) eighth grade IEP; (5) ninth grade IEP; and (6) a School Activities Questionnaire completed by Karen Altman.

Notably, the record includes medical reports from claimant's treating physician, Kevin Albert, M.D.  In 2002, Dr. Albert diagnosed claimant with ADHD and prescribed Concerta.[5]  (T.

---

[5] Concerta is a central stimulant used in the treatment of ADHD, narcolepsy, and certain forms of depression associated with medical conditions which would preclude treatment with conventional antidepressants. *Dorland's Illustrated Medical Dictionary*, 406, 1171 (31st ed. 2007).

254).  In 2004, Dr. Albert examined claimant and noted that plaintiff stopped giving claimant his medication for "nebulous" reasons.  (T. 256).  Dr. Albert again prescribed Concerta and during a follow-up examination a few weeks later, noted that claimant's behavior had improved.  (T. 257).

The record also contains claimant's academic records from 2000 through 2007.  At the conclusion of the 1999/2000 school year, the Thousand Islands Central School District Committee for Special Education suggested that claimant repeat second grade rather than receive special education services. (T . 154).  In 2000, claimant's second grade teachers noted that he was not meeting grade level in reading, writing and math and that claimant could not focus. (T. 138).  In fourth grade, claimant's teachers noted that he "wasted time, lacked self control and could not focus".  (T. 118).  At the request of claimant's fifth grade teacher, a Conners' Parent and Teacher Rating Scale was prepared.[6]  (T. 103).  The results revealed that claimant was "at-risk" or "clinically significant" for ADHD, restlessness, impulsivity and inattentiveness. (T. 104).  The evaluator concluded that claimant's profile met the criteria for Hyperactive/Impulsive type ADHD. (T. 104).  In sixth grade, claimant's teachers noted that claimant was below average in reading, language, math and science. (T. 115).  In November 2004, the Troy School District School Psychologist and School Psychology Intern prepared a Psychological Report. (T. 234).  According to the evaluation, plaintiff's full scale IQ was 78, his attention was average and he was often "lethargic". (T. 244).  The psychologists recommended that claimant receive visual and auditory cues with teaching lessons, work in small groups and suggested a review of his medication dosage. (T. 246).  The record also contains an additional evaluation from Karen

[6] The Conners' Rating Scale is an instrument that uses observer ratings and self-report ratings to help assess attention deficit/hyperactivity disorder (ADHD) and evaluate problem behavior in children and adolescents. http://www.pearsonassessments.com (last visited April 2, 2010).

Altman which the ALJ failed to mention.  In May 2005, Ms. Altman prepared a School Activities Questionnaire and noted that claimant was diagnosed with ADHD and that claimant's attention and concentration were "poor". (T. 107).  In May 2005, claimant's seventh grade report card indicated that claimant had a 65% average in most subjects, his attendance was poor and he was unprepared for class.  In May 2005, plaintiff was suspended for the remainder of the school year after bringing a knife to class. (T. 272).

The record also contains claimant's IEP for the eighth grade and ninth grade which indicate that claimant was placed in special education classes in 8th and 9th grade.  (T. 124, 348). J.B.'s full scale IQ was 78. (T. 124, 348). The evaluators recommended that claimant attend special education classes with a 15:1 ratio and noted that he, "needed directions delivered in short, simple phrases". (T. 124, 348).  Moreover, the evaluators noted that, "[J.B.] will not participate in regular education classes due to severe reading comprehension and writing difficulties" and J.B. was exempt from any language requirement other than English. (T. 124, 319).

The ALJ's failure to discuss the aforementioned evidence and explain why claimant's impairments did not satisfy the specific criteria of Listing § 122.11 was plain error.  *See Morgan*, 913 F.Supp. at 188-189 (holding that a one-sentence denial is insufficient to support the determination, especially in light of the considerable evidence to the contrary).  The ALJ inappropriately selected portions of the record that supported his ultimate conclusions.  *See Martinbeault v. Astrue*, 2009 WL 5030789, at *7 (N.D.N.Y. 2009).  Although the ALJ referred to Dr. Guenther's analysis, he did not expressly adopt her conclusions and even assuming that he had, reliance upon Dr. Guenther's opinions does not support the finding because Dr. Guenther's failed to address **any** particular Listing.  The Second Circuit has held that, "[w]here there is a

reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  The ALJ should have considered all evidence available and provided some explanation as to why claimant's impairments do not meet the criteria of § 112.11.

Defendant argues that the ALJ's failure to address a specific Listing is not reversible error because the record supports the overall conclusion.  While there may be some evidence to support the ALJ's position, the ALJ's decision cannot be upheld due to his failure to articulate his rationale or to analyze the record in any meaningful way.  The record contains at least some evidence that could provide a basis for the conclusion that J.B.'s impairments meet the criteria for Listing § 112.11.  The Second Circuit has held that a Court should not hesitate to remand a matter for further explanation when the Court is unable to fathom the ALJ's rationale in relation to evidence in the record.  *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).  The ALJ must provide sufficient rationale in support of his decision to not find a listed impairment.  *Id*.  As the ALJ improperly disregarded "highly probative evidence", the case is remanded to the Commissioner for further proceedings.  *Wilson v. Callahan*, 1997 WL 714863, at *5 (W.D.N.Y. 1997).  Upon remand, the ALJ is instructed to properly consider and evaluate the entire record and apply the correct legal standards with regard to Listing § 112.11.

**B.     Functional Domains**

As discussed *supra*, the ALJ must analyze whether claimant has an impairment or combination of impairments that functionally equals a Listing based upon an analysis of six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Plaintiff contends that J.B.'s impairments are functionally equivalent to the Listings and argues that the ALJ erred when he failed to find that J.B. suffers from an extreme limitation in the domain of attending and completing tasks. (Dkt. No. 11, p. 21).  In the alternative, plaintiff claims that even assuming that the ALJ properly found that J.B. suffers from a marked limitation in the domain of attending and completing tasks, the ALJ still erred in failing to find that J.B. has a marked limitation in the domains of acquiring and using information and interacting and relating with others. (Dkt. No. 11, p. 21).  Plaintiff also argues that the ALJ failed to give proper consideration to the effect of J.B.'s structured setting and supportive classroom situation. (Dkt. No. 11, p. 25).

**1.      Attending and Completing Tasks**

The domain of attending and completing tasks gauges how well a child is able to focus and maintain attention.  20 C.F.R. § 416.926a(h).  For children of J.B.'s age (adolescents age 12 to attainment age 18), the regulations provide:

> Adolescents (age 12 to attainment of age 18). In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting..

20 C.F.R. § 416.926a(h)(2)(v).

Some examples of limited functioning include: (1) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (2) "being slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently

interrupting others; and (4) being easily frustrated and giving up on tasks.  *See* 20 C.F.R. §

416.926a(h)(3)(i)-(v); *see also Morgan*, 2005 WL 925594, at *13.  The Regulations define an

extreme limitation as:

> an "extreme" limitation . . .interferes very seriously with your ability
> to independently initiate, sustain, or complete activities.  Your
> day-to-day functioning may be very seriously limited when your
> impairment(s) limits only one activity or when the interactive and
> cumulative effects of your impairment(s) limit several activities.
> "Extreme" limitation also means a limitation that is "more than
> marked."  "Extreme" limitation is the rating we give to the worst
> limitations. However, "extreme limitation" does not necessarily mean
> a total lack or loss of ability to function. It is the equivalent of the
> functioning we would expect to find on standardized testing with
> scores that are at least three standard deviations below the mean.
>
> (iii) If you are a child of any age (birth to the attainment of age 18),
> we will find that you have an "extreme" limitation when you have a
> valid score that is three standard deviations or more below the mean
> on a comprehensive standardized test designed to measure ability or
> functioning in that domain, and your day-to-day functioning in
> domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(i); § 416.926a(e)(3)(iii).

By contrast, a marked limitation is:

> (i) . . . an impairment(s) [that] interferes seriously with your ability to
> independently initiate, sustain, or complete activities. Your day-to-day
> functioning may be seriously limited when your impairment(s) limits
> only one activity or when the interactive and cumulative effects of
> your impairment(s) limit several activities. "Marked" limitation also
> means a limitation that is "more than moderate" but "less than
> extreme." It is the equivalent of the functioning we would expect to
> find on standardized testing with scores that are at least two, but less
> than three, standard deviations below the mean.
>
> (iii) If you are a child of any age (birth to the attainment of age 18),
> we will find that you have a "marked" limitation when you have a
> valid score that is two standard deviations or more below the mean,
> but less than three standard deviations, on a comprehensive
> standardized test designed to measure ability or functioning in that
> domain, and your day-to-day functioning in domain-related activities
> is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(i); § 416.926a(e)(2)(iii).

Here, the ALJ found that J.B. has a "marked" limitation in this domain.  (T. 20).  The ALJ concluded:

> He has been tried on different medications with only moderate improvement as evidenced in the medical records.  The claimant's mother testified that the claimant was not entirely compliant with his current medication orders.  School records and teacher reports consistently notes [sic] the need for repetition of instructions, re-focusing, and one-on-one attention.  He has great difficulty with completing tasks at school and at home.  On several occasions, throughout the record, the claimant was noted to be lethargic. (T. 20).

Plaintiff argues that the record supports a finding that J.B. suffers from an extreme limitation because J.B. reads at a 6th grade level while in the 9th grade, cannot participate in sports and cannot complete his chores without constant reminders. (Dkt. No. 11, p. 21).  Moreover, plaintiff claims that J.B. is easily frustrated, sidetracked, interrupts others and requires extra supervision. (Dkt. No. 11, p. 22).  The Commissioner argues that the ALJ's determination is supported by substantial evidence including: (1) evaluations from J.B.'s teachers who found that he had an obvious but not serious problem in this domain; (2) Dr. Guenther's and Dr. Thibodeau's opinions; and (3) evidence that J.B.'s condition improved when he was compliant with his medication.  (Dkt. No. 12, p. 19).

Upon a review of the record, the Court finds that substantial evidence supports the ALJ's conclusion in this domain.  The record reveals that although J.B. was easily distracted and needed reminders to complete his tasks, this evidence is not sufficiently overwhelming to warrant a reversal of the ALJ's decision and support a finding that claimant suffers from the "worst limitations".  *See Pagan ex rel. Delgado v. Barnhart*, 409 F.Supp.2d 217, 222 (W.D.N.Y. 2006) (the fact that the claimant required assistance in his work and in maintaining activities for a

period of time did not warrant a reversal of the ALJ's determination that the claimant suffered

from a less than marked limitation).  Here, there is no evidence of any comprehensive

standardized testing that reveals that J.B.'s limitations were so severe as to be the equivalent of

functioning "at least three standard deviations below the mean".  *See Duran v. Barnhart*, 2003

WL 103003, at *11 (S.D.N.Y. 2003).  Further, enrollment in special education classes does not, in

and of itself, warrant a finding of extreme limitations.  *Id*. (finding that the need for special

education placement is not conclusive for there is "too much variability" from school district to

district and in the criteria for placement to justify reliance on this factor).   In addition, the

medical reports from Dr. Albert suggest that J.B. responded well to medication. (T. 255-258); *see*

*also Duran*, 2003 WL 103003, at *12 (the claimant's symptoms improved with medication

providing substantial evidence to support the conclusion that the claimant's limitations were not

extreme nor marked).  Finally, although plaintiff argues that J.B. is unable to participate in sports,

the record does not support that conclusion.  In the ninth grade IEP, the evaluators noted that,

"[a]lthough [J.B.] was previously diagnosed with ADHD, there are no physical or medical issues

that impact his education.  He is able to participate in all physical activities". (T. 350).  Even

assuming that there is some evidence establishing that claimant suffers from an "extreme"

limitation in this domain, there is substantial evidence to support the ALJ's determination that the

claimant suffers from a marked limitation and therefore, this Court will not disturb the ALJ's

determination.  *Duran*, 2003 WL 103003, at *11 (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d

Cir. 1990)).

      Plaintiff argues that the ALJ failed to consider J.B.'s ability to function outside his highly

structured and supportive classroom situation.  In this regard, the "Commissioner's regulations

require the ALJ to consider the effects of a structured or highly supportive setting . . . on the

claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting".[7] *Smith v. Massanari*, 2002 WL 34242375, at *6 (W.D.N.Y. 2002).  The fact that claimant required a structured setting is, "actually suggestive of greater, rather than lesser, limitation".  *Cavanaugh v. Astrue*, 2009 WL 4264370, at *7 (N.D.N.Y. 2009).   While the ALJ must consider this factor, the regulations do not direct the ALJ to explicitly discuss these factors in the decision.  *Watson ex re. K.L.W. v. Astrue*, 2008 WL 3200240, at *4-5 (W.D.N.Y. 2008).  However, courts have remanded when it is evident that the ALJ did not consider the effects of a structured setting.  *Gonzalez ex rel. C.C. v. Astrue*, 2009 WL 4724716, at *6-7 (N.D.N.Y. 2009).  In this domain, the ALJ's analysis was not confined to school records.  The ALJ cited to medical records, plaintiff's testimony, school records and teacher reports in assessing how well J.B. focused and maintained attention.  Even assuming that the ALJ failed to consider the impact of claimant's special education classes on his impairments in this domain, the ALJ's decision is nonetheless supported by substantial evidence.  *See Hudson ex rel. S.G. v. Astrue*, 2009 WL 1212114, at * 7 (N.D.N.Y. 2009) (holding that although the ALJ did not analyze the impact of the claimant's structured educational environment as to her limitations with respect to this domain, the ALJ's decision was also supported by standardized test results and the opinion of claimant's treating psychiatrist).

---

[7] Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

Based upon the record, the Court finds substantial evidence to support the ALJ's determination that J.B. suffers from a marked limitation in this domain.

### 2.    Acquiring and Using Information

In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well he can use the information he has learned. *Edmond v. Barnhart*, 2006 WL 2769922, at *9 (W.D.N.Y. 2006).  For children J.B.'s age, the Regulations provide:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. 416.926a(g)(2)(v).

An analysis of this domain should include school records including non-medical evidence provided by a teacher, who works with a child on a daily basis and observes him in a social setting with peers as well as adults.  *Edmond,* 2006 WL 2769922 at *10 (holding that the ALJ erred by not considering the report of the claimant's teacher in making a determination on the domain of acquiring and using information) (citing *Matthews o/b/o Dixon v. Barnhart*, 339 F.Supp.2d 1286, 1290, n.8 (N.D. Ala. 2004)); *see also Jones ex rel. SA v. Astrue*, 2009 WL 1924763, at *6 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1513(d)(2)(e)).   Moreover, opinions and reports from a school psychologist can provide evidence to establish an impairment.  20 C.F.R. § 404.1513(d)(2); 20 C.F.R. § 404.1513(a)(2).

20

In this matter, the ALJ found that J.B. has less than marked limitations in this domain. The regulations define a "moderate" limitation of function as a limitation less than "marked." *Colon v. Apfel*, 133 F.Supp.2d 330, 340, n.8  (S.D.N.Y. 2001) (citing 20 C.F.R. § 416.926a(c)(3)(i)(C)). Plaintiff claims that J.B. has a marked limitation in this domain and argues that J.B. has received special education services since he was 3 years old and IQ/objective testing indicates that J.B. has always functioned below other children his own age.  (Dkt. No. 11, p. 23).

The ALJ found:

> In this domain, the child has less than "marked" limitations.  The claimant has a low average IQ.  There was no evidence of any speech problems.  Learning disability is noted especially in the verbal areas.  Some of his achievement scores were seriously low, but others were in the low average range.  Overall function in this area is less than marked. (T. 19).

The ALJ did not cite to any specific report, evaluation or opinion in support of his determination in this domain.  The Court is unable to ascertain what evidence the ALJ relied upon in reaching his conclusions.  Indeed, the record contains evidence, which the ALJ seemingly ignored, that provides some support for plaintiff's claim that J.B. suffers from "marked" impairments in this domain.

In May 2004, claimant's teacher, Sara Houghtaling completed a Teacher Questionnaire and noted that claimant presented an "obvious" problem in this domain.[8] (T. 196).  Specifically, Ms. Houghtaling indicated that J.B. had obvious problems with comprehending oral instructions, reading and comprehending written material, understanding and participating in class discussions, providing organized explanations and descriptions, expressing ideas in new form, learning new material, recalling and applying previously learned material and applying problem-solving skills

---

[8] The teacher was asked to categorize J.B's abilities in each domain as "no problem", a "slight problem", an "obvious problem", a "serious problem", or a "very serious problem".

in class. (T. 196). In October 2005, claimant's special education teacher, Karen Altman, opined that claimant exhibited an "obvious to serious problem" in this domain which required him to sit close in order to focus in a 15:1 ratio class. (T. 181). Ms. Altman noted that J.B. had a serious problem comprehending oral instructions, reading and comprehending written material and math problems and applying problem-solving skills. (T. 182). Ms. Altman also indicated that J.B. had obvious problems understanding school and content vocabulary, understanding and participating in class discussions, providing oral explanations and descriptions, expressing ideas in written form, learning new material and recalling/applying previously learned material. (T. 182). Further, Dr. Thibodeau opined that although claimant had, "the ability to understand age-appropriate directions, he could not complete age-appropriate tasks in an appropriate manner", he was, "not able to learn in accordance with his own cognitive capacity". (T. 212). The ALJ specifically afforded "some weight" to the teachers' opinions and "controlling weight" to Dr. Thibodeau's opinions, but then inexplicably concluded that claimant has a less than marked limitation in this area.

Moreover, claimant's ninth grade IEP, which the ALJ neglected to discuss, reveals that claimant received special class instruction in a 15:1 class ratio and testing accommodations. Further, J.B. does not participate in regular education classes due to "severe reading comprehension and writing difficulties" and is exempt from any language requirement other than English. (T. 319). The evaluators noted:

> [J.B.] had difficulty keeping up with the pace of the class so he received math in a basic skills class in 8th grade. [J.B.] has difficulty in the areas of staying focused, following directions and being organized. With regards to math, J.B. can calculate exponents and use quantities less than a whole, however, he has difficulties with dividing multi-digit numbers and regrouping. Although J.B. has good auditory learning skills, his reading comprehension is below grade level. (T. 350).

When the ALJ fails to address, "the significant quantity of evidence in the record indicating continued impairment in [] intellectual and academic functioning", or to "acknowledge [] conflicting evidence in the record" and "fail[s] to explain the basis for finding less than marked limitation in the domain of acquiring and using information, the decision is not supported by substantial evidence". *See McClain v. Barnhart*, 299 F.Supp.2d 309, 324-25 (S.D.N.Y. 2004). In this case, the ALJ did not mention the plethora of reports which document some progress, but also show that J.B. has had years of academic difficulties in acquiring and using information.  In the absence of any attempt to reconcile conflicting evidence in the record, or to assess the complete academic picture, *see Matos ex rel. Mota v. Barnhart*, 2007 WL 943654, *10 (S.D.N.Y. 2007) (finding that although the ALJ looked to academic evidence to support the conclusion that the claimant had a less than marked limitation, the ALJ "neglected to adequately evaluate the complete academic picture"), the Court cannot conclude the ALJ's finding that J.B. had a less than marked limitation in the area of acquiring and using information is supported by substantial evidence.

Defendant argues that although claimant was in special education classes, his IEP reports state that he "had done well with special class instruction" and that his eighth grade school reports indicate that he "was making some progress in nearly all areas of reading and writing". (Dkt. No. 12, p. 22).  Defendant's argument lacks merit.  "[G]ood performance in a special education setting does not mean that [a child is] functioning at the same level as other children [his] age who do not have impairments".  *F.M. v. Astrue*, 2009 WL 2242134, at *9 (E.D.N.Y. 2009) (holding that the claimant was "the beneficiary of the devoted efforts of teachers", but that fact was insufficient to support a finding that his limitations were not marked) (citing 20 C.F.R. 416.924a(b)(7)(iv)).

Finally, the Court notes that the ALJ failed to consider claimant's structured setting in his analysis of this domain. In his decision, the ALJ relied upon and considered IQ tests and school records. A finding of "less than marked" is unsupported by substantial evidence when the ALJ fails to consider that the child's improvements in behavior occurred only in the structured special education setting). *Gonzalez*, 2009 WL 4724716, at *6. Accordingly, on remand, the ALJ should discuss and analyze claimant's medical records, testimony from claimant's mother and if necessary, obtain testimony from claimant's siblings or from other individuals concerning claimant's abilities outside of his special education setting. *See Martinbeault*, 2009 WL 5030789, at *7-8.

### 3.  Interacting and Relating to Others

Plaintiff contends that the ALJ erred by failing to find that J.B. has a marked impairment in the domain of interacting and relating to others. Plaintiff alleges that the evidence demonstrates that J.B. was unable to make any age appropriate friends, that he is a loner, withdrawn, lethargic and has inappropriate social behavior. (Dkt. No. 11, p. 24). Defendant argues that the evidence supports the ALJ's determination that J.B. has a less than marked limitation in this domain. Specifically, defendant cites to Ms. Altman's report, IEP reports and Dr. Guenther's opinion. (Dkt. No. 12, p. 23).

The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For J.B.'s age (age 12 to attainment of age 18), the Regulations provide:

> By the time you reach adolescence, you should be able to initiate and
> develop friendships with children who are your age and to relate

> appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

20 C.F.R. 416.926a(i)(2)(v).

The ALJ found that J.B. has a less than marked limitation in this area and relied upon the seventh grade IEP, Ms. Altman's May 2004 Questionnaire and Ms. Houghtaling's October 2005 Questionnaire.[9]  The ALJ concluded:

> The claimant has had some disciplinary problems at school, with sanctions imposed for violating of [sic] school rules or polices.  Some of the problems related to insubordination or problems with authority. However, the incidents were relatively infrequent over a period of time, and only one incident (bringing a knife to school) resulted in a significant suspension.  The claimant has been placed on probation after a theft incident.  Recently the claimant has been attending a church group; and, except for one incident, has been getting along well.  The claimant requires a 15:1 special education class, but does not need a smaller class (12:1 or 8:1). (T. 20).

While the record contains some evidence lending support to the ALJ's assessment, the record is replete with evidence demonstrating that J.B. has significant limitations that seriously interfere with his abilities in this domain.  Although Ms. Houghtaling found that claimant had a "slight problem" in this domain, she also indicated that claimant was given "time-outs" and removed from the classroom due to his behavior. (T. 198)  Further, Dr. Thibodeau opined that claimant was not able to adequately maintain social behavior due to inattentiveness and social withdrawal and concluded that claimant had some moderate difficulty interacting with peers and

---

[9] Ms. Houghtaling and Ms. Altman noted that claimant had a "slight problem" in this domain. (T. 181, 195).

with adults given the severity of his behavioral disturbance. (T. 212).   The May 2005 School Conduct Report reveals six instances of claimant's disruptive behavior including disrespect for authority, insubordination and fighting in class culminating in claimant's suspension from school for bringing a knife to class. (T. 272).   In December 2005, claimant's teachers reported that claimant lied to his mother about his conduct in school, was disrespectful and rude to adults and constantly disruptive in class. (T. 347).   The ALJ correctly notes that the seventh grade IEP indicated that claimant had "minimal social difficulties", however, the ALJ omitted the remaining comments in that section wherein the committee found, "[h]owever, he can have difficulties when in an unstructured setting.  Therefore, [J.B.] benefits from a small group setting." (T. 232).   This opinion was reiterated in the eighth and ninth grade IEPs.  (T. 126, 350).

        With regard to this domain, the ALJ relied upon J.B.'s behavior in school and failed to consider claimant's functioning outside of the classroom environment.  The ALJ found plaintiff to be "generally credible" but disregarded plaintiff's hearing testimony.  The ALJ noted that plaintiff testified that claimant was caught stealing and sees a probation officer once a week. (T. 18).  Plaintiff also stated that claimant forgets to take his medicine and puts himself in dangerous situations including crossing the street without looking for oncoming cars. (T. 18).   However, the ALJ failed to reconcile that "credible" testimony with his conclusion that claimant suffers from a less than marked limitation in this domain.  While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence.  *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).  The ALJ did not explain why he rejected significant evidence in the record which resulted in an improper evaluation and a flawed analysis of claimant's impairment in this domain.

Finally, plaintiff argues that the ALJ failed to cite to any evidence in support of the assertion that, "[t]he claimant requires a 15:1 special education class, but does not need a smaller class (12:1 or 8:1)".   Upon a review of the record, the Court finds no documentation supporting the ALJ's assertion.  Indeed, the most recent IEP for the 2006/2007 school year recommends that claimant continue in his special education environment.  (T. 348).  The record is devoid of any evidence that claimant can or should return to a less restrictive structured environment.  *See Smith v. Massanari*, 2002 WL 34242375, at *6 (W.D.N.Y. 2002) (holding that the ALJ failed to fully and properly consider the effects of the claimant's structured educational placement on his overall functioning - i.e., the claimant's most recent IEP authorized his continued placement in day treatment program with no evidence of any suggestion that the claimant return to a less restrictive environment).

In light of the foregoing, the Court finds that the ALJ's determination that J.B. suffered from a less than marked impairment in the domain of interacting and relating with others is not supported by substantial evidence.  Accordingly, remand is necessary for a further and complete evaluation of this domain.

**C.    New Evidence**

Following the ALJ's decision, plaintiff submitted new evidence to the Appeals Council for consideration.  (T. 335-53).  This evidence included two Progress Reports for IEP Goals for the 2005/2006 (8th grade) school year dated November 29, 2005 and February 6, 2006.  *Id.*  Although the Appeals Council denied review of the ALJ's decision, it expressly considered the new evidence.  (T. 7)  Defendant argues that the Court should not consider the evidence which

pre-dates the ALJ's decision because it is not material and would not have changed the ALJ's

decision. (Dkt. No. 12, p. 25).[10]

Social Security Regulations require the Appeals Council to consider additional evidence if

it is new, material and related to the period on or before the date of the ALJ's hearing decision.

*Bosmond v. Apfel*, 1998 WL 851508, at *11-13 (S.D.N.Y. 1998) (citing *Perez v. Chater*, 77 F.3d

41, 45 (2d Cir.1996)).  The Court must consider whether: (1) the additional evidence is new,

rather than merely cumulative; (2) the evidence is material, that is, relevant to the time period for

which benefits were denied, probative, and reasonably likely to have altered the administrative

decision if known at the time; and (3) good cause exists for the failure to present the evidence

earlier.  *Id.* (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988)).  To be material, the

evidence must create a reasonable possibility that the Commissioner's previous determination

would be influenced by the information.  *See Gonzalez ex rel. Gonzalez v. Barnhart*, 2004 WL

1460634, at *5 (S.D.N.Y. 2004).  Evidence submitted to the Appeals Council following the ALJ's

decision becomes part of the administrative record to be considered on judicial review.  *Perez*, 77

F.3d at 45.

Defendant argues that notwithstanding the above, the Court should disregard the evidence

that pre-dates the ALJ's decision as it is not material.  The Court has reviewed the evidence and

finds that it is relevant to claimant's condition during the time period for which benefits were

denied.  *See Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988); *see also Pollard v. Halter*, 377

F.3d 183, 193 (2d Cir. 2004) (finding the evidence new even though it was generated after the

ALJ's decision because it suggested "that, during the relevant time period, the claimant's

condition was far more serious than previously thought and that additional impairments existed

---

[10] The ALJ's decision is dated January 31, 2006.  Therefore, the Court assumes that defendant is objecting to consideration of the November 2005 IEP report only.

28

when the claimant was younger.").  Accordingly, defendant's argument with regard to the

evidence that pre-dates the ALJ's decision is without merit.

**VI.      CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter

be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings

consistent with the above; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral

to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be

to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Date:  June 3, 2010

_____
Norman A. Mordue
Chief United States District Court Judge